The second case for argument is 25-2940 from the District of South Dakota, Dakotans for Health et al. v. Monae Johnson. May it please the Court, Counsel, in their challenge to South Dakota's nine-month petition filing deadline, appellees testified that the deadline, quote, decreases their chances of collecting enough signatures, jeopardizes their ability to qualify, makes it more difficult, less chance of making the ballot, tougher, harder. And that's it. That's all the evidence, all the testimony that appellees provided concerning the alleged burden of the nine-month deadline. And harder, tougher, or more difficult is just not the standard for invalidating a state law regulating the petition process, a process, by the way, that the state is not even obligated to provide under the United States Constitution. So as a creature And if it was the standard, the courts would be legislatures. Correct. As a creature of state law, South Dakota has, quote, considerable leeway in enacting laws to protect the integrity and reliability of the initiative process. That's this Court's decision in South Dakota Voice. But the district court here gave South Dakota no leeway at all. The district court found, first of all, that South Dakota had zero regulatory interest in the efficacy of citizen petition challenges, and secondly, that this nine-month deadline did not serve that interest. Well, the district court's reasoning is in direct conflict with on-point United States Supreme Court authority. First, the district court's finding that the state had no interest in citizen challenges because such challenges are not brought by a government actor defies John Doe. John Doe is factually indistinguishable from this case. In that case, the issue was a state sunshine law that allowed public access to petitions in order to subject those petitions to scrutiny through a citizen process. John Doe ruled that even though this open record process was not brought by a government actor, it served the state's interest in election integrity. And the same is true here. Citizen petition challenges perform a state function. It serves the purpose of allowing citizens to review whether something should be on the ballot, and the legislature has an interest in the efficacy of the citizen challenges, and the nine-month deadline serves that interest. Secondly, the district court— Let me ask two questions in that regard. First, is there any evidence in the record that the citizen litigation can be accomplished in the nine-month period? And then second, isn't it true that South Dakota provides for full relief post-election for these citizen petitions? Well, it's axiomatic that the more time that you have to litigate a case, the better chance it is that you're going to get it finished. Courts are pretty good in South Dakota about trying to accelerate election cases. So, yes, nine months could solve a lot of election challenges. And the next question was, Your Honor? South Dakota provides full relief post-election. Sure. So what's the difference? The difference is that the legislature made a decision that it wants to prioritize pre-election litigation. And the reason for that is because— Well, it's interesting to me that this interest wasn't asserted in S.D. Voice, was it? Well, it wasn't asserted in S.D. Voice because it wasn't a problem when we had a 12-month deadline. It becomes a very big problem when you have a six-month deadline. So with South Dakota's experience with the six-month deadline, it figures out, whoa, six months is not long enough to get cases litigated. It was long enough when it was 12 months, but it's not long enough at six months. So the legislature split the difference. And the legislature simply made a policy choice that they are going to try and level the First Amendment playing field by creating a nine-month deadline, splitting the difference between petition proponents and petition opponents. To follow up on that, was there evidence that the three months made a difference? Well, there was evidence in Mr. Hansen's case, Speaker Hansen's case. That was a very — that was very narrowly not completed to litigation prior to the deadline. And Speaker Hansen testified— Under which deadline? Sorry? Under which deadline? How many months did he get — did it take for him — under what deadline was he working? Six-month deadline, yes. So — and Speaker Hansen testified to, you know, the reasons for these petition challenges. He testified— Didn't he get his through, then? Isn't that what you're saying? He got his in? He what? In the six months? Speaker Hansen got his case into court in the six months? No, he did not. Not quite. And what — but wasn't he — there seemed to be some motions to continue, motions to recuse and things. Yes. And that's — The court was trying to get it in. Yeah. And that's kind of the problem that, you know, we had the factual dispute down — That was mooted by the petition losing, right? Eventually, yes. After the election, yes. So Speaker Hansen did testify to the necessity for these petition challenges. It — he testified to numerous instances of fraud, mistake, overzealous petition circulation tactics, and the legislature felt the need to do something about that. And it decided that the way to do that is through these citizen challenges, first of all, and to give those citizen challenges an opportunity to be litigated as much as possible. Not in every case. We understand that there may be some need for post-election litigation, but the legislative priority is on pre-election litigation. And, you know, that's what the legislature does. It sets those parameters. Has the South Dakota Supreme Court — it seems to me there was a case or two, maybe just one, where they said, we just want to deal with this after the election because we don't want to get involved pre-election. Is that true? Well, it can be dealt with after the election, but that's — And why isn't that enough? Why isn't that sufficient to follow up on Judge Grunder's question? Because the legislature set a nine-month deadline, and the legislature is the one that sets that priority. And while it may be that there is this post-litigation or post-election litigation option, it's up to the legislature to decide. Well, and I understand that that's what the legislature wants. What I'm trying to get at is the rationale for it and why it furthers the interest of the state in protecting the integrity of the election. Because it gives petition opponents more time to challenge whether this question should even be on the ballot or not. And as was reported in one of the earlier cases in connection with Amendment A, voters feel disenfranchised. They lose confidence in the system when these things appear on the ballot, and then a court comes along later and says, oh, nope, you know, we're nullified. We're not going to recognize the outcome of this vote. What about the opposite? What if the challenge were successful prior to the election, and then it gets appealed and the South Dakota Supreme Court says, oh, no, that challenge was not proper. That should have been on the ballot. Doesn't that disenfranchise the voter just as much as your example? Well, I think the important thing is that the litigation occurred as much as possible. And there are appeals that, you know, if the litigation moves along fast enough, you can have both trial and appellate-level litigation concluded within nine months. Because South Dakota courts do tend to accelerate these election challenges. So that's what the legislature was trying to do here. And that's a public priority that they have decided. The legislature decided that. And, you know, as the Supreme Court noted in Williams 575 U.S. 449, quote, a state need not address all aspects of a problem in one fell swoop. Policymakers may focus on their most pressing problems. And the standard that the district court held the statute to was to require that it would solve all litigation in one fell swoop. And that's just not the standard. So you have two glaring constitutional errors here. You have, first of all, the John Doe error. You've got the Williams error. And holding this statute to a standard of 100 percent efficacy in resolving pre-election litigation is precisely the kind of elaborate empirical justification that Timmons says states are not required to provide. Now, I know my friend Jim will come up here after me and say that, well, you know, losing three months of core political speech is more than merely inconvenient. But that's just a conclusory statement. Like Apelli's brief, it doesn't flesh out what merely inconvenient means. Apelli's would have it mean anything that makes it harder or tougher. But any regulation deadline makes things a little harder or tougher. The question here, more than merely inconvenient, is one which cannot be met through proper planning and preparation. And there's nowhere in the record of this case evidence from the Apelli's in that testimony that they cannot meet this deadline through proper planning and preparation. And I expect my friend Jim will come up here and talk about the earlier South Dakota Voice case. But that case is distinguishable for three very meaningful reasons. First of all, the efficacy of citizen petition review was not at issue in South Dakota Voice. It was only the State's administrative review. The State's evidence failed to show that the Secretary of State needed a year to conduct her verification. Here, the evidence shows, however, that six months is not long enough to litigate citizen challenges in at least the trial courts. The second distinction with South Dakota Voice is South Dakota Voice criticized the State for relying on, quote, a bare assertion of election integrity without supporting evidence. And there is no such evidentiary deficiency here. Speaker Hanson testified to concrete instances of fraud and mistake and irregularity in the petition process that the citizen challenges in HB 1184 were enacted to address. And he also testified to the desirability of minimizing post-vote nullification. And finally, and I think this is a really important distinction with South Dakota Voice, is that the only interest at stake in South Dakota Voice was the State's interest in the administrative counting process. Here, there is a State interest in the efficacy of challenges, but there's also the First Amendment rights of petition opponents that are at stake here. 1184 was enacted not just to serve State interests at the expense of proponents, but to — we have opponents who are constituents here, and their rights are — Can the State assert the First Amendment rights of the citizens? It's part of the process of the citizen challenge. That's what it is. The State is trying to level the First Amendment playing field between proponents and opponents. As it is under a nine-month deadline, proponents have 15 months. There's plenty of good weather in 15 months for them to get their petitions signed and filed. Through proper planning and preparation, they can do that. They want opponents to have only six months to challenge. That's not a level of First Amendment playing field, and that's what the legislature was trying to address with the nine-month deadline. I'd reserve the balance of my time for rebuttal, if I may. Thank you. Thank you. Mr. Leach? Thank you, Your Honor. May it please the Court. House Bill 1184 eliminates three months of core political speech for no good reason. The district court found that eliminating those three months of core political speech harms Dakotans for Health in a number of ways that I describe at page 29 to 30 of the red brief. The State — But you don't oppose a six-month deadline. True, Your Honor. And yet you say any interference with core political speech is unconstitutional. So how do you justify those inconsistent positions? Your Honor, what we're saying is that the State cannot eliminate core political speech except for a good reason. That's the test this Court applied in South Dakota Voice v. Nome. That's the test that applies here. And the question is whether there's a good reason to eliminate those three months. Judge Grunder, in response — Well, of course, you're sliding over your fierce argument for strict scrutiny. Well — My question was addressed to how can your argument for strict scrutiny stand up when you concede that there can be good reasons for some restriction of core speech? I think — I just think the Court doesn't have to reach the strict scrutiny versus Anderson verdict, just as it did not reach in the State in South Dakota Voice v. Nome. Judge Grunder, in response to your question, the State suggested that the evidence here was thin of harm to Dakotans for health. That's not the case. In fact, the evidence was undisputed. The State put on no evidence challenging our testimony, and it does not claim that the District Court's findings were clearly erroneous. So the State has waived that factual argument. The State's only interest here is this alleged newly discovered interest about need to complete litigation before the election. And the State told you that wasn't relevant three years ago in South Dakota Voice v. Nome. That's absolutely false, because in South Dakota Voice v. Nome, the District Court had said six months is the maximum. And when the case came here on appeal, the State was looking for every reason it could find to say that's wrong. State didn't have this interest of outsposing needing to complete litigation before the election was over. But now the District Court has said effectively six months is not fine. Actually, all this ruling is is at nine months. I'm talking about the reasoning. The reasoning is over the top in my view. As I read the reasoning, Your Honor, it's that the State has not justified banning three months of court political speech by this additional newly discovered alleged interest. And I'd like to tell you four reasons why I think that's exactly right. The first reason is if the legislature wanted to be sure that litigation was concluded before an election, all it would have to do is pass a law setting deadlines. Ten days to file. Ten days to respond. Five days to reply. Have your trial within ten days. Notice of appeal within five more days. South Dakota Supreme Court decided the case within 50 days. That's not a constitutional limitation on the legislature. They've got to do it perfectly. No, I can't do it at all. Absolutely, Your Honor. I'm saying this elimination of three months of court political speech does not in any way meet this alleged interest. And what I was trying to explain is many states have such laws about expedited litigation in the election. But you haven't addressed the contrary arguments this morning. Well, I'm trying to get there, Your Honor. Neither does the district court. I'm trying to get there, Your Honor. The second core reason why I think the district court is absolutely correct is that you're right. In South Dakota, there's over 100 years of unbroken precedent from 1896 to the present that a challenge to a petition can be brought after the election is over. No matter how you decide this case, that's still going to be the law in South Dakota. So there won't be any need to bring litigation before the election because you can bring it after. Well, there is certainly some interest, as the other counsel suggested, in not having courts overturn so-called the will of the people. Well, actually, that's their argument. But just five years ago, in Tom, THOM versus Barnett, the state made exactly the opposite argument. Because in Tom versus Barnett, what happened is that citizens brought initiative. It got on the ballot, and it was enacted. And after it's been enacted, the state comes in and says, well, we don't think this fits our Constitution. And the proponents say, wait a minute. You waived your right to challenge this. You had a whole year to challenge it. You could have. You didn't. And so forget it, state. The state responds, no. South Dakota law has always allowed us to challenge it post-election. And therefore, we can challenge it post-election. And the South Dakota Supreme Court agrees with the state and goes on to invalidate the initiative. So while you're absolutely correct, Judge Grunder, that that's an argument the state can make, the state made the opposite argument five years ago. This is the ultimate unprincipled flip-flop solely to try to reach the result it wants to, in this case, just like it reached the result it wanted to five years ago in Tom versus Barnett by asserting the exact opposite. And then the fourth reason, the fourth core reason, the third was Tom versus Barnett. The fourth core reason is that this law is severely under-inclusive, as the district court recognized. As Justice Scalia wrote in Florida Star in his concurring opinion in 1989, a law cannot justify a restriction upon truthful speech when it leaves appreciable damage to that supposedly vital interest unprohibited. And this law does not get litigation concluded before the election in any way, shape, or form. And getting to your question, Judge Kelly, about what happened to this 2004 litigation, the trial in the trial court would not even have been concluded until nine months plus two days after the petition deadline. So even with the nine-month deadline, had it been in effect, litigation would not have been concluded in the trial court. But how do you, how do you draw a line here? Nine months, eight months, seven months, is it a matter of evidence that the state has to, that the parties have to put on to determine when a, when a case or how long a case will actually take to get resolved before the election? How do you, how do you draw this line? You'd have to have a legitimate state interest to start with. And if you did have a legitimate state interest. You're saying that isn't here? I'm saying it isn't. Integrity? No, this has nothing. It's clear there's a state interest here. Absolutely, Your Honor, in the election. But this isn't about, this statute is not about election integrity. Well, you say conveniently. Well, it's about eliminating three months of poor political speech. If we had a statute. Yeah, counsel, I, you know, we're not. That's just, that's just crazy. Of course, what we, the legislature proceeds for a lot of different reasons. But they obviously are, when they prioritize pre-election litigation. That's, that's, they're, they are acting in what they perceive as the state's interest. Well, I would agree. Because of the interest, because of the interest of the group that it helped. Or that it favors or assists. Well, I would agree with you, Your Honor, if that were consistent with South Dakota law. Or if this, this legislature said we're going to finish this litigation before the election. They can say that. They can make those rules. That's not what's going on, what's going on here. To get back to your point. They can do what they did. They can say we, we want it to, we want it to, we want it to be concluded. It's to everybody's advantage to conclude it. But if it's not concluded, our case law provides a, a, a fix, so to speak. That's not ideal, but it's there. Under the case law, Your Honor, nobody has to even start the litigation until after the election is over. And no matter how you rule, that's still the law in South Dakota. Okay, so what? What I'm saying is. None of this, to me, makes a hill of beans to your, is any support for your arguments. I'm sorry you feel that way, Your Honor. Judge Kelly, I wanted to get back to your question about the, whether the additional three months allows litigation to be concluded. The answer is the district court found absolutely not. Even with the nine months in this 2024 litigation, there is no way that even in the trial court litigation was not concluded, much less the inevitable appeal to the South Dakota Supreme Court. What about, what about the assertion by counsel that they just at least want to get some of it done? There's a chance it could get done before the election. Maybe it won't. But at least those extra three months give that a little bit extension of time to increase the chances that it would be. Is that, is that a legitimate government interest? Or is that, does that further their interest in the pre-litigation, pre-election litigation interest? That's, that's, Your Honor, that's not a strong enough interest to justify banning three months of court political speech. Because what you decided in South Dakota Voice is. And who decides that? Well, ultimately. Maybe the elected officials? Maybe, maybe not lawyers in courts? Ultimately, you do, Your Honor, under South Dakota Voice, what South Dakota Voice, you said three years, three years ago, is this, this court cannot simply accept the interest the State's alleged. This court must look and see whether there are actual interests that stand up to scrutiny. And that's what this interest does not. Was there evidence that the additional three months increased the chances that litigation would be complete by the election? Was there any evidence of that at the district court? I think it's self-evident that it would increase the chance. So everybody agreed that that was a, that that would? It's, no, it's a, that it's a possibility. It's a mere possibility. And as I keep coming back to, litigation can be brought after the election. It doesn't even have to be started before. But the State makes this related argument. It says the district court ignored this interest in, in evaluating the accuracy of these, of these petitions. And that's not correct. If you look at the addendum, page 17, the district court said two things on that subject. At the top of the page, the district court says the State has not tied 1184 to the State's regulatory interest in protecting the integrity and reliability of the initiative process. And then the other thing the court says down at the bottom of page 14, the State has not shown that a nine-month filing deadline satisfies that interest. It just allows for three more months of litigation that may or may not result in a final resolution before the election. And this whole under-inclusiveness principle that I talked about, that is designed to ferret out whether the actual reason for a ban on speech is the real reason or not. And that's why there has to be such a close fit, because we're talking about the First Amendment, we're talking about poor political speech. There's no such fit here. The State, in its rebuttal brief for the first time, and then in its argument today, makes this argument that this law supposedly balances proponent and opponent speech. That argument must fail for two separate reasons. Number one, it's not in the State's opening brief. So because it's not in the State's opening brief, the State has waived it. Number two, even if you were to reach it, it's completely wrong. This law bans three months of proponent poor political speech. It does not do anything to opponent political speech. Opponent political speech can proceed always, unimpeded, with no effect whatsoever by this law. So that argument in the State's rebuttal brief simply will not fly. There's a couple other arguments the State makes in its brief that I'm going to spend perhaps 20 seconds on, because you rejected them in South Dakota Voice versus Nome. Essentially, those arguments are that this restriction on speech leaves the proponents with some avenues of speech, so it cannot be unconstitutional. That's exactly wrong, because the rule, as Chief Justice Roberts enunciated in his concurrence in Citizens United, and as I believe the majority opinion in Citizens United enunciates, is that more speech is better. That's the First Amendment rule in this country. The answer to speech we don't agree with is not to get rid of it, it's simply to have more speech. And this law puts its heavy foot on the scale by banning three months of poor political speech for petition proponents doing absolutely nothing to restrict opponents in any way. Finally, Your Honor, I'd like to simply conclude with what I think is inescapable from South Dakota Voice versus Nome, which is that this Court evaluates the State's alleged reasons for getting rid of poor political speech. This Court looks at whether those reasons are strong and supported by evidence and the record, not just by assertion. And this law does not accomplish its purpose. All it does is get rid of this poor political speech for no good reason. South Dakota Voice controls this case. I respectfully ask you to affirm. Thank you, I appreciate your time. Thank you, Your Honor.  For Rameau? Speaker Hanson testified that the whole point of 1184 is to give citizen petition challenges a little more time on the back end to get these cases litigated. We talk about poor political speech, whose poor political speech? South Dakota Voice had only to do with proponent political speech. This case is different because now we're talking about opponents and proponents. Opponents here have the same interest in engaging in the political process as proponents do, and their six-month deadline is designed to take three months of poor political speech away from opponents. How do you respond to the assertion that the opponents have plenty of time after the election, that there's no limitation on their ability to oppose the initiative? Speaker Hanson testified to voters feeling disenfranchised by these post-election litigation outcomes where people feel like they're not heard, their voice wasn't heard. So I understand that point, that people feel disenfranchised. But you're talking about the opponent's speech, but there doesn't seem to be a limitation on that speech. Well, it is because the voters have a right to know whether something belongs on the ballot or not. And if something, let's say something passes, and then there's litigation over it, how's a court going to view that? Is the court going to go, well, the people spoke, and maybe I should sort of favor that point of view since this thing did pass? I just think it's a factual problem when you're dealing with things after the election. If it shouldn't be on the ballot, it just shouldn't be there, period, and instead of trying to solve that question after the fact. Thank you, Your Honors. Thank you, counsel. The case has been thoroughly briefed. The argument's been helpful. We'll take it under advisement.